******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

TATAYANA OSBORN ET AL. *v.* CITY OF
WATERBURY ET AL.
(AC 39574)

Lavine, Prescott and Harper, Js.

*Syllabus*

The plaintiff mother brought this action on her own behalf and on behalf
of her minor child, T, to recover damages for personal injuries that T
sustained when she was assaulted by other students during a lunchtime
recess at her elementary school. The matter was tried to the court,
which rendered judgment in favor of the plaintiffs. The defendants, the
city of Waterbury and the Waterbury Board of Education, appealed to
this court, claiming, inter alia, that the trial court improperly determined,
in the absence of expert testimony, that one student intern and three
or four staff members were insufficient to control as many as four
hundred students on the playground. *Held* that the trial court improperly
rendered judgment in favor of the defendants, as the plaintiffs were
required to present expert testimony as to the standard of care applicable
to the defendants under the circumstances; because the policies and
procedures of our public school system are highly regulated by governing
bodies and accreditation organizations, and the standards are set by
professionals, the standard of care regarding the number of supervisors
needed to ensure the safety of elementary school students on a play-
ground was not a matter of common knowledge and, thus, under those
circumstances, the plaintiffs were required to produce expert testimony
on the standard of care and to show how the defendants breached that
standard, which the plaintiffs failed to do.

Argued February 5—officially released April 17, 2018

*Procedural History*

Action to recover damages for personal injuries sus-
tained by the named plaintiff as a result of the defen-
dants' alleged negligence, and for other relief, brought
to the Superior Court in the judicial district of Water-
bury, where the action as withdrawn as to the defen-
dants Charles Stango et al.; thereafter, the matter was
tried to the court, *Hon. Barbara J. Sheedy*, judge trial
referee; judgment for the plaintiffs, from which the
named defendant et al. appealed to this court; subse-
quently, the court, *Hon. Barbara J. Sheedy*, judge trial
referee, issued an articulation of its decision, and the
defendant Danielle Avalos et al. withdrew their appeal.
*Reversed; judgment directed.*

*Daniel J. Foster*, corporation counsel, for the appel-
lants (named defendant et al.)

*Richard M. Franchi*, for the appellees (plaintiffs).

*Opinion*

LAVINE, J. This personal injury action concerns the injuries the minor plaintiff, Tatayana Osborn (child),[1] sustained during a lunchtime recess at her elementary school. The defendants, the city of Waterbury (city) and the Waterbury Board of Education (board), appeal from the judgment of the trial court rendered in favor of the plaintiffs.[2] On appeal, the defendants claim that the trial court improperly (1) rejected their special defense of governmental immunity for discretionary acts, (2) concluded that the plaintiffs' injuries were caused when an inadequate number of adults were assigned to supervise up to 400 students when there was evidence that there were no more than fifty students on the playground, (3) found in the absence of expert testimony that one student intern and three or four staff members were insufficient to control as many as 400 students on the playground, and (4) awarded damages intended to encourage continued therapy and occupational training for the child in the absence of evidence that she would need such services in the future. We agree with the defendants' third claim and conclude, as a matter of law, that without expert testimony, the court could not properly have found that the defendants breached their duty of care to the child because there was an inadequate number of adults on the playground to supervise the students at the time the child was injured. We, therefore, reverse the judgment of the trial court.[3]

The following facts are relevant to our resolution of the defendants' appeal. On April 25, 2012, the child was an elementary school student when she was assaulted by other students while they were on the playground during the lunchtime recess. As a result of the assault, the child sustained a cut to her face that required sutures to repair and resulted in scarring. The plaintiffs commenced the present action against the city, the board, the president of the board, and several members of the school staff. See footnote 2 of this opinion. The plaintiffs alleged, among other things, that certain members of the school staff were careless and negligent in failing to supervise the students on the playground and protect the child from injury. As to the city, the plaintiffs alleged, in part, that the child was an identifiable victim and that the city owed her a duty to protect her safety on school premises. As to the board, the plaintiffs alleged, in part, that the board was responsible for establishing and enforcing policies regarding the education and safety of students such as the child by hiring and training school staff to protect the students' safety. As a result of the defendants' claimed breach of duty, the child suffered lacerations to her nose and cheek, which resulted in scarring, among other things. The defendants denied the allegations of negligence and asserted three special defenses.[4]

The parties tried the case to the court. Following the presentation of evidence, the court issued a memorandum of decision in which it found that the child was a fifth grade student at Sprague Elementary School in Waterbury when she was assaulted by two or more students on the playground. The playground was surrounded by brick walls and fencing, and following lunch, students occupied the area for play and exercise. More specifically, the child was surrounded by a circle of students who physically assaulted her and pushed her into a stone wall, causing injuries to her nose and cheek with resulting facial scarring. The child experienced post-traumatic headaches for a sustained period of time, but the most serious effect of this schoolyard assault was its lingering effect on the child's emerging personality and self-image.

The court also found that Danielle Avalos, a school paraprofessional, was assigned to monitor the students on the playground during recess. She was not provided with written documents that listed her duties during the lunchtime recess. Her two day professional development training occurred prior to the first day of school and focused on the forms of student bullying and the need to distinguish between bullying and students merely "picking on" other students or otherwise being unkind to them. At the time of the incident, classroom teachers were on luncheon recess.[5] The court "conclude[d]" that one student intern and three or four staff members were not sufficient to exercise control over as many as 400 students on the playground.

With respect to the incident during which the child was injured, the court found that Avalos saw a student repeatedly punch the child in the face and push her into a wall. A precis prepared by the nursing division of the Waterbury Health Department referenced, "a large, deep cut on the [child's] left cheek" and "a cut of lesser depth on the bridge of her nose." The court found that, at trial, it was clear the child was conscious of her facial scarring and that she considered that scarring to be her primary, perhaps only, sequela of the incident. The scars have diminished significantly. The court's review of the exhibits persuaded it that the most serious of her injuries was the effect the incident has had on the child's behavior. Since the incident, the child has demonstrated unpleasant, even rude, behavior in the presence of family and other caregivers. She acts out, and the suggestion is strong that she presents at school as unfriendly, perhaps even hostile. It was the court's view that the child would benefit from additional behavioral counseling. The court stated that its substantial award was intended to encourage continued therapy and occupational training for the child.

Although the plaintiffs' counsel did not provide the court with a list of medical expenses incurred, the court reviewed all of the exhibits and concluded that the

medical expenses were $7090.47. The court stated that, although no evidence was offered to support an ongoing need for continued therapy in any form, its award would permit the same should the family determine future treatment is desirable for the child. The court did not award damages for permanency in the absence of medical testimony in support of it. The court entered judgment in favor of the plaintiffs in the amount of $67,090.47.

The dispositive claim in this appeal is whether the court improperly concluded that "one . . . student intern and three . . . or four . . . staff members were not sufficient to exercise proper control over perhaps as many as . . . (400) students" where there was no evidence that any defendant breached the pertinent standard of care. The defendants argue on appeal that the plaintiffs failed to produce any evidence, let alone expert testimony, that the pertinent standard of care required more than four or five adults to monitor students on the playground and therefore the court's finding that the defendants breached the standard of care was clearly erroneous. We agree with the defendants that the plaintiffs were required to present expert testimony as to the standard of care applicable to the defendants under the circumstances.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . We sometimes refer to the scope of that duty as the requisite standard of care." (Internal quotation marks omitted.) *Utica Mutual Ins. Co.* v. *Precision Mechanical Services, Inc.*, 122 Conn. App. 448, 454, 998 A.2d 1228, cert. denied, 298 Conn. 926, 5 A.3d 487 (2010).

The question of whether a duty exists is a question of law over which we exercise plenary review. *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002). Professional negligence "is frequently defined as the failure of one rendering professional services to exercise the degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Internal quotation marks omitted.) *Keeney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 375, 889 A.2d 829 (2006).

"In a negligence action . . . expert testimony will be required [i]f the determination of the standard of care requires knowledge that is beyond the experience of a normal fact finder . . . . The requirement of expert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to

understand the applicable standard of care and to evaluate the defendant's actions in light of that standard . . . . [A]lthough expert testimony may be admissible in many instances, it is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the tier of fact." (Footnotes omitted; internal quotation marks omitted.) *Brye* v. *State*, 147 Conn. App. 173, 181–82, 81 A.3d 1198 (2013).

We conclude, as a matter of law, that the standard of care regarding the number of supervisors needed to ensure the safety of elementary school students on a playground is not a matter of common knowledge; far from it. The policies and procedures of our public school system are highly regulated by governing bodies and accreditation organizations. School teachers and administrators are required to be accredited in accordance with educational standards. The plaintiffs themselves alleged that, under the laws of the state, the city is charged with the control and supervision of students in elementary schools. As to the board, the plaintiffs alleged that it was responsible for establishing and enforcing its policies, regulations and procedures regarding the education and safety of students such as the plaintiff. The standards, therefore, are set by professionals and are not within the common knowledge of the general public. A judge's subjective view on the subject is far from sufficient.

In their appellate brief, the plaintiffs argue that the need for expert testimony was not brought to the attention of the court. That argument is unpersuasive given the record[6] and the law. The plaintiffs were required to produce expert testimony on the standard of care and to prove that the defendants' conduct did not measure up to that standard. See *Buckley* v. *Lovallo*, 2 Conn. App. 579, 582–83, 481 A.2d 1286 (1984) (failure of hospital to have written rules for its conduct was insufficient to establish violation of standard of care in absence of proper showing that having such rules was standard practice).[7]

In the present case, the plaintiffs failed to present expert testimony as to the standard of care related to the number of supervisors needed on an elementary school playground to ensure the safety of the students during recess. The plaintiffs also failed to present expert testimony that the number of staff on the playground supervising the children at the time the child was injured constituted a breach of the standard of care. For the foregoing reasons, the court erred as a matter of law in rendering judgment for the plaintiffs.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

[1] The child commenced the present action by and through her mother Tacarra Smith. Smith also alleged that she sustained damages as a result of the child's injuries. We refer to Smith and Osborn as the plaintiffs.

[2] The plaintiffs also brought this action against Stephanie Pascale, a fifth grade teacher; Charles Stango, the president of the board; Danielle Avalos, a paraprofessional at the school; and Donna Perrealt, the school principal. They withdrew the action against Pascale and Stango in the trial court. In its articulation, the court clarified that it did not find that Avalos and Perrealt were liable for the plaintiffs' injuries. Avalos and Perrealt, therefore, withdrew from the present appeal. In this opinion, we refer to the city and board as the defendants.

[3] Because we resolve the appeal on the ground that the court improperly concluded that there was an insufficient number of staff on the playground to ensure the safety of students, we need not address the remainder of the defendants' claims.

[4] The special defenses were as follows: (1) municipal employees of the state are entitled to qualified immunity for the performance of discretionary duties; (2) the city is entitled to governmental immunity pursuant to General Statutes § 52-557n (a) (2) (B); and (3) members of municipal boards who are not compensated for such membership are entitled to immunity for any error or omission made in the exercise of such person's policy or decision-making responsibilities pursuant to § 52-557n (c).

[5] The court found no evidence to establish that staff lunch times were staggered. It also found no evidence to suggest that only some members of the student body were released from lunch at a given time. The court found it more likely that the student body ate together in the lunchroom and then went outside for recreation in large numbers. On appeal, the defendants dispute the court's findings regarding staggered lunches and the release of students to the playground. They cite testimony to the contrary, e.g., Avalos thought that there were no more than fifty students on the playground at the time of the subject incident. We need not decide whether the court's findings with respect to staggered lunches and release to the playground are clearly erroneous as we reverse the court's judgment on the basis of its conclusion that there was an insufficient number of staff supervising the students on the playground at the time of the incident.

[6] During final argument before the trial court, the following exchange took place between counsel for the defendants and the court.

"[The Defendants' Counsel]: There's been no evidence by anyone—by the plaintiff indicating that—or showing that—how many individuals on a playground would necessarily make it safe. There's been no expert testimony regarding that.

"The Court: Well, I agree with you on that. I don't know that it's necessary, however."

[7] The plaintiffs also argue on appeal that the defendants could be found negligent pursuant to statute or policy and that there was testimony regarding a board policy that there was to be one staff member for every 125 students on the playground. The written policy, however, was not admitted into evidence, and the court made no finding in that regard.

In the context of medical malpractice actions, our Supreme Court has stated that institutional "rules, regulations and policies do not themselves establish the standard of care." *Van Steensburg* v. *Lawrence & Memorial Hospitals*, 194 Conn. 500, 506, 481 A.2d 759 (1984); see also *Baxter* v. *Cardiology Associates of New Haven, P.C.*, 46 Conn. App. 377, 390–91, 699 A.2d 271 (affirming trial court's exclusion, on relevancy grounds, of evidence related to procedures followed by hospital personnel for obtaining blood and stating evidence "would be relevant only if it was later supported by expert testimony that a cardiologist would rely on a resident to order blood on an expeditious basis"), cert. denied, 243 Conn. 933, 702 A.2d 640 (1997). We need not reach the question of whether such cases are applicable in a suit against a municipality. In the present case, the trial court made no finding as to the standard of care on the basis of school policy.