******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MALGORZATA ZANIEWSKI *v.* CEZARY ZANIEWSKI
## (AC 39903)

Lavine, Prescott and Elgo, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff and issuing certain financial orders. The defendant claimed that the trial court improperly failed to use the parties' net incomes in calculating its orders of child support and alimony, ordered the defendant to pay alimony in an amount that exceeded his ability to pay, and abused its discretion by crafting inequitable property distribution and alimony orders. *Held* that under the unique circumstances of this case, equity required a new trial on all financial matters; where, as here, the trial court's memorandum of decision was devoid of any relevant factual findings, and the court made no findings regarding the value of any marital assets or the respective financial circumstances of the parties, including their income or earning potential, provided no analysis or rationale for its division of the marital property or its other financial orders, did not indicate whether either party was at fault for the breakdown of the marriage and made no explicit credibility determinations regarding the testimony of witnesses, it was not possible to ascertain, without engaging in speculation, what path the court followed in crafting its support orders and dividing the marital assets, and because the defendant did all that could reasonably be expected of him to obtain an articulation of the factual findings necessary to obtain review of the financial orders but was thwarted, through no fault of his own, due to the retirement of the trial judge, it would be against the interests of justice to apply mechanistically a presumption of correctness of the court's support orders, which presumption has been applied in cases in which the appellant raised claims in the face of an inadequate factual record and did not resort to available procedural tools to perfect the record.

Argued January 17—officially released June 4, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain, and tried to the court, *Pinkus, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court; thereafter, the court, *Connors, J.*, denied the defendant's motion for articulation; subsequently, this court granted the defendant's motion for review but denied the relief requested therein. *Reversed in part*; *further proceedings*.

*James E. Mortimer*, for the appellant (defendant).

*Katarzyna Maluszewski*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, Cezary Zaniewski, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Malgorzata Zaniewski. The defendant claims on appeal that the court improperly (1) failed to use the parties' net incomes in calculating its orders of child support and alimony, (2) ordered the defendant to pay alimony in an amount that exceeds his ability to pay, and (3) abused its discretion by crafting inequitable property distribution and alimony orders that "excessively and unjustifiably favored the plaintiff."

The trial court's memorandum of decision fails to set forth the factual basis for its financial orders. The trial judge who authored the decision retired shortly after issuing its decision, rendering fruitless the defendant's proper and timely efforts to remedy the decision's lack of findings in order to secure appellate review of his claims. In many cases, an inadequate record would foreclose appellate review of an appellant's claim. Nevertheless, the inadequacy of the record in the present case arises not from any fault attributable to the defendant, but from the trial court's issuance of a memorandum of decision that contained virtually no factual findings that would permit us to review appropriately the defendant's appellate claims. Although we are cognizant that the trial court is entitled to great deference in crafting financial orders in marital dissolution actions, we nevertheless conclude under the unique circumstances presented here that equity requires a new trial. Accordingly, we reverse the judgment of the trial court with respect to the financial orders and order a new trial.

The matter was tried before the court over the course of three days, ending on November 22, 2016. On November 25, 2016, the court issued a four page memorandum of decision dissolving the parties' marriage on the basis of irretrievable breakdown.

The trial court's decision contains only the following uncontested facts. The parties were married in New York in 2005. They have two minor daughters who were issue of the marriage.[1] In January, 2016, the plaintiff, who had resided in Connecticut for at least one year, commenced the underlying action for dissolution of marriage.

The memorandum is devoid of any relevant factual findings, and the court's legal analysis is limited to the following statement: "The court listened to and observed witnesses, and reviewed the exhibits. In addition, the court carefully considered the criteria set forth in the Connecticut General Statutes in reaching the decisions reflected in the orders below." The court did not discuss the respective financial circumstances of the parties, including any findings regarding their income or earning potential. The court made no findings

with respect to the value of any marital assets, and provided no analysis or rationale for its division of the marital property or its other financial orders. The court did not indicate whether either party was at fault for the breakdown of the marriage or shared fault. The court made no explicit credibility determinations regarding the testimony of witnesses. Although the plaintiff claims that completed child support guideline worksheets were provided to the court by the parties, she concedes that they were never made a part of the record. There are no completed child support guideline worksheets in the trial court file.

The remainder of the court's decision consists of nineteen, separately numbered orders. In addition to orders dissolving the parties' marriage and incorporating by reference the parties' parenting plan,[2] the court ordered the defendant to pay the plaintiff "$204 per week as child support in accordance with the child support guidelines" and "$100 per week as alimony for a period of three years from the date of [the] judgment . . . [to] terminate upon the death of either party or the plaintiff's remarriage . . . [and] subject to the provisions of [General Statutes] § 46b-86 (b)." The parties were ordered to share equally in the cost of their children's extracurricular activities and healthcare. The court awarded the parties' delicatessen business and marital residence in Plainville to the plaintiff without assigning a value to those assets, and ordered the defendant to sign all necessary paperwork to transfer his interest in those properties to the plaintiff. The court allowed the defendant to retain "any interest he may have" in a rental property owned by his family in Queens, New York. The court did not identify what interest, if any, the defendant had in the property or assign a value to that interest, although the record indicates that these issues were hotly contested at trial.

The court ordered that the parties be responsible for the debts listed on their respective financial affidavits, with the exception of the balance on two credit cards, for which they would be equally responsible. Each party was awarded whatever personal property currently was in his or her possession, including automobiles, and each was permitted to retain his or her own bank accounts except for certain joint accounts with Farmington Bank, which were awarded to the plaintiff. The court also ordered that it would "retain jurisdiction over educational support orders pursuant to [General Statutes] § 46b-56c."

The defendant timely appealed from the dissolution judgment on December 15, 2016. On June 23, 2017, the defendant filed a motion for articulation in accordance with Practice Book § 66-5. The defendant asked the trial court to articulate its factual findings regarding, among other things, the parties' respective gross incomes, which were in dispute, and what value it had assigned

to their various assets and liabilities. The defendant also asked the court to indicate whether it found the parties' financial affidavits or trial testimony credible with respect to these matters.

The defendant also made several requests for articulation related to the New York rental property purportedly owned by his family. In particular, he sought to have the trial court articulate the factual basis for determining that he had retained any interest in the New York property,[3] what interest, if any, it found he had retained in the property, and whether the court had credited an appraisal of the property that was entered into evidence. These requests for articulation all related to the defendant's principal claims on appeal that the trial court improperly calculated the alimony and child support awards and inequitably divided the parties' marital assets and debts. The plaintiff did not oppose the motion for articulation.

The motion for articulation was forwarded to the trial court on June 23, 2017. Judge Pinkus, the trial judge, who retired on June 15, 2017, did not act on the motion. On September 29, 2017, the motion for articulation was redirected to Judge Susan A. Connors, the presiding family judge. On October 6, 2017, Judge Connors issued an order denying the defendant's motion for articulation. The court's order stated: "The motion for articulation is denied. Neither party has requested a hearing nor does the court deem it necessary to hold a hearing. The trial judge, Judge Pinkus, has retired and is without jurisdiction to take any further action."

On October 16, 2017, the defendant timely filed a motion for review of the court's decision denying his motion for articulation. The plaintiff did not file any objection to the motion for review. The defendant argued that Judge Connors incorrectly concluded that Judge Pinkus lacked jurisdiction to act on the motion for articulation due to his retirement. The defendant noted that General Statutes § 51-183g expressly provides authority for such action, and he asked this court to order the trial court to articulate its findings in response to the questions posed in his motion for articulation. On January 24, 2018, a panel of this court granted the motion for review, but denied the relief requested therein.[4]

The defendant principally claims on appeal that he is entitled to a new trial regarding the court's financial orders because he contends that the court failed to use the parties' net incomes in calculating its orders of child support and alimony and inequitably distributed the marital assets.[5] The defendant recognizes that the trial court failed to set forth in its memorandum of decision express findings regarding what income it imputed to the parties in calculating its support orders or even what evidence it relied on in reaching its conclusions. Nevertheless, he argues that the trial court did not use

the net income figures from the parties' financial affidavits, and that, under any reasonable view of the evidence before the court, "[i]t becomes quite evident that the trial court utilized some amount in excess of the respective net incomes of one or both parties when fashioning its child support award . . . ."

In response, the plaintiff does not dispute that the parties presented confusing and conflicting evidence to the court regarding the parties' incomes and values of marital assets and acknowledges that the trial court's decision contains no express findings of income nor any explanation of how the court calculated its support orders. The plaintiff conceded at oral argument that, although the parties provided the trial court with child support worksheets, they were never made a part of the trial court file and, thus, are not part of the record before us on appeal. The plaintiff also conceded that the court was required to assign some value to the defendant's present interest in the New York rental property in order to equitably distribute the marital assets, a finding that was not included in the court's memorandum of decision. The plaintiff nevertheless argues that (1) the court, as the trier of fact, was free to disregard the parties' financial affidavits and to credit whatever evidence it chose, (2) evidence was available for the court to make all necessary factual findings, and (3) although not expressly set forth in its decision, those findings are implied. In sum, the plaintiff argues that "sufficient facts exist on the record to draw the conclusions supporting the order[s] issued by the trial court," and, given the highly deferential standard that applies to appellate review of financial orders in dissolution actions, we must presume that the court acted correctly.

On the basis of our review of the trial transcripts and the remainder of the record, we conclude, contrary to the plaintiff's argument, that it is impossible to ascertain what path the court followed in crafting its support orders and dividing the marital assets without engaging in pure speculation. Had the defendant failed to avail himself of procedures to obtain an articulation of the court's factual findings, including those regarding the parties' gross incomes and valuation of assets, it is highly unlikely that the defendant could prevail on any of his claims on appeal. Nevertheless, the defendant *did* attempt to have the court articulate the factual findings necessary to obtain review of the financial orders, although those efforts were of little avail given the retirement of Judge Pinkus.[6] We conclude, for the reasons that follow, that, given the present circumstances, which are unlikely to arise with any frequency in the future, it would be against the interests of justice to apply mechanistically a presumption of correctness to the court's support orders because to do so would effectively, and unfairly, result in a forfeiture of the defendant's statutory appellate rights. See Practice

Book § 61-10, commentary.

We begin with our standard of review and other relevant law. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the question of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . .

"*This deferential standard of review is not, however, without limits.* There are rare cases in which the trial court's financial orders warrant reversal because they are, for example, logically inconsistent . . . or simply mistaken . . . . We cannot countenance financial orders that are the product of mistake, even if they ultimately may be seen to be reasonable. . . . *The trial court's decision must be based on logic applied to facts correctly interpreted.* . . . Each party is entitled to overall financial orders which reflect the court's discretion and are based upon the facts elicited and the statutory criteria." (Citation omitted; emphasis added; internal quotation marks omitted.) *Hammel* v. *Hammel*, 158 Conn. App. 827, 835–36, 120 A.3d 1259 (2015).

Another limit placed on the trial court discretion's in crafting financial orders is the requirement under our rules of practice that the court provide a written or oral decision that "shall encompass its conclusion as to each claim of law raised by the parties *and the factual basis therefor*." (Emphasis added.) Practice Book § 64-1. Without such a rule, a trial court could inoculate important rulings from appellate scrutiny simply by electing not to set forth the factual basis for its rulings.

In *Scherr* v. *Scherr*, 183 Conn. 366, 439 A.2d 375 (1981), our Supreme Court considered whether a trial court in a dissolution action had committed reversible error by failing adequately to set forth the factual basis for its financial orders as required under the predecessor of Practice Book § 64-1.[7] In addressing the plaintiff's claim premised on the brevity of the trial court's memorandum of decision, the court in *Scherr* stated: "The plaintiff urges that meaningful appellate review of the trial court's exercise of its discretion is made impossible by too brief a statement of its reasoning by a trial court. *Undoubtedly this becomes true at some point.* We hold, however, that in the circumstances of this case, given the transcript and other parts of the record available to us, the memorandum meets the minimum requirements of reviewability." (Emphasis added; footnote

omitted.) *Scherr* v. *Scherr*, supra, 368.

Significantly, the court in *Scherr* also based its decision to reject the plaintiff's claim on the fact that the plaintiff had never alerted the trial court about the inadequacies in the memorandum of decision, indicating that the plaintiff could have filed a motion for articulation. Id., 368–69. We read *Scherr* as recognizing the possibility that "at some point," a court's failure to set forth factual findings in support of its financial orders *could* provide a procedural basis for reversing those orders, particularly if the appellant diligently attempted to remedy the inadequacy of the record without success. Id., 368.

The outcome in *Scherr* certainly is consistent with our appellate courts' treatment of claims raised in the face of an inadequate factual record, particularly if the appellant has not resorted to available procedural tools to perfect the record. It is axiomatic that the appellant bears the burden of providing this court "with a record adequate to review his claim of error." (Internal quotation marks omitted.) *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 129, 981 A.2d 1068 (2009). Furthermore, "a claim of error cannot be predicated on an assumption that the trial court acted erroneously." (Internal quotation marks omitted) Id., 129–30. Accordingly, our appellate courts often have recited, in a variety of contexts, that, in the face of an ambiguous or incomplete record, we will presume, *in the absence of an articulation*, a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of the facts were necessary. See, e.g., *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482, 586 A.2d 1157 (1991) ("[if] an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment").

The question before us is whether this same presumption is warranted in a case in which a party has done all that can reasonably be expected to obtain an articulation but has been thwarted through no fault of its own. We answer that question in the negative and decline to apply a presumption of correctness to a trial court decision that is devoid of any factual findings in support of its conclusions. In this case, the defendant took all reasonable actions necessary to remedy the lack of adequate factual findings necessary for our review. He filed a motion for articulation. When that motion was denied on faulty jurisdictional grounds, he timely filed a motion for review of that decision with this court. Furthermore, the plaintiff never filed any opposition at any stage of the proceedings contending that the requests for articulation were not necessary for a proper review of the claims on appeal.

Moreover, an action to dissolve a marriage is an equi-

table proceeding and, thus, principles of equity must guide the entire process, including any appeal. "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . The term equity denotes the spirit and habit of fairness, justness and right dealing which would regulate the intercourse [between individuals]." (Citation omitted; internal quotation marks omitted.) *Luster* v. *Luster*, 128 Conn. App. 259, 264–65 n.9, 17 A.3d 1068, cert. granted on other grounds, 302 Conn. 904, 23 A.3d 1243 (2011) (appeal dismissed April 12, 2012). "To affirm for lack of record when the faulty record stems from the trial court's failure to comply with [what is now Practice Book § 64-1], despite a motion for articulation, would deprive the plaintiff of an appeal despite the significance of the issues involved and despite the strong, yet imperfect, efforts of counsel." *Holmes* v. *Holmes*, 32 Conn. App. 317, 334, 629 A.2d 1137 (*Lavery, J.*, dissenting), cert. denied, 228 Conn. 902, 634 A. 2d 295 (1993). Having considered all the competing interests involved, which includes the plaintiff's interest in not having to relitigate issues that she would contend properly were decided in her favor, we conclude that the appropriate action in this case is to remand the matter for a new trial on all financial orders.[8]

The judgment is reversed with respect to the financial orders only and the matter is remanded for a new trial; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The children were born in July, 2006, and March, 2009.

[2] The parties agreed to joint legal custody of the children, with the plaintiff having primary physical custody subject to a visitation schedule with the defendant as set forth in the parenting plan.

[3] The nature of the defendant's interest in the New York property was disputed at trial. The defendant testified that he had purchased the New York property for his parents and brother-in-law in 2001, prior to his marriage with the plaintiff, and then had transferred the property to his parents in October, 2014, in order to secure a loan to expand the delicatessen business. The plaintiff took the position that the transfer of the property was fraudulent and meant to hide a marital asset.

[4] General Statutes § 51-183g provides: "Any judge of the Superior Court may, after ceasing to hold office as such judge, settle and dispose of all matters relating to appeal cases, as well as any other unfinished matters pertaining to causes theretofore tried by him, as if he were still such judge."

The plain language of this statute demonstrates that the trial court's assessment that Judge Pinkus lacked jurisdiction to act on the motion for articulation due to his retirement was incorrect. Nevertheless, as the panel of this court that considered the motion for review undoubtedly concluded in declining to order an articulation, the mere fact that a retired jurist has continuing statutory authority to act does not solve the myriad of issues and impracticalities involved in forcing a retired jurist to return to service. The statute states only that a judge "may" act after retirement; it does not mandate any action. We leave for another time the proper procedure for trial courts to follow if faced with a motion for articulation or rectification directed to a retired judge, but we do not believe that the remedy contemplated by § 51-183g presents a viable option under the totality of the circumstances in this case.

[5] "It is well settled that a court must base child support and alimony orders on the available net income of the parties, not gross income." (Internal quotation marks omitted) *Tuckman* v. *Tuckman*, 308 Conn. 194, 209, 61 A.3d 449 (2013). A trial court abuses its discretion by ordering child support "without determining the net income of the parties, mentioning or applying the guidelines, or making a specific finding on the record as to why it was deviating from the guidelines." Id., 208. In the present case, although the court indicated it followed the child support guidelines, we are left to speculate as to what income figures the trial court utilized in its calculations. Furthermore, if the court deviated from the guidelines, it did not indicate this in its decision, nor did it provide any rationale for making a deviation.

[6] Certainly, there is no doubt that we have the authority to order the trial court to undertake whatever actions may be necessary to perfect the record on appeal. See Practice Book §§ 60-2, 60-5, and 61-10. It would not be possible, however, for a judge to state the factual basis underlying another judge's discretionary decisions, particularly because the new judge would be left to speculate about what evidence the other judge may have credited, and to reevaluate witness testimony from a printed transcript without the ability to make important and necessary credibility determinations. As we have indicated, ordering the retired judge to articulate factual findings at this time is a wholly impractical option. See footnote 4 of this opinion.

[7] The trial court in *Scherr* had dissolved a twenty-three year marriage "without any award of alimony [to the plaintiff appellant], with a relatively modest award of child support, and with an award to the defendant of one-half of the equity in the marital home." *Scherr* v. *Scherr*, supra, 183 Conn. 369.

[8] "Individual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." (Internal quotation marks omitted.) *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 226, 118 A.3d 657, cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).