******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRESCOTT, J., dissenting. I agree with the majority that the trial court's findings regarding the number of children on the playground at the time the minor plaintiff, Tatayana Osborn, was injured are clearly erroneous. I disagree, however, that this improper factual finding entitles the defendants, the city of Waterbury and the Waterbury Board of Education, to a new trial. Accordingly, I respectfully dissent.

I

The majority more than adequately sets forth the relevant facts and procedural history of this case, and I see no need to repeat them here. It is important to emphasize, however, that our Supreme Court, in a four to three decision, reversed our prior determination that the defendants were entitled to judgment because "the plaintiffs failed to present expert testimony as to the standard of care related to the number of supervisors needed on an elementary school playground to ensure the safety of the students during recess." *Osborn* v. *Waterbury*, 181 Conn. App. 239, 246, 185 A.3d 675 (2018), rev'd, 333 Conn. 816, 220 A.3d 1 (2019).

In reaching the conclusion that expert testimony on the number of teachers necessary to ensure the safety of the children on the playground was not required in this case, our Supreme Court provided two principal rationales. First, it concluded that expert testimony was not required because "a determination of adequate supervision of children is common knowledge, based on everyday life." *Osborn* v. *Waterbury*, 333 Conn. 816, 831, 220 A.3d 1 (2019). Thus, in the Supreme Court's view, the issue of whether the children were adequately supervised could be decided reliably by the fact finder without the assistance of expert testimony. Id.

Importantly, our Supreme Court offered a second and equally determinative rationale: "[W]e disagree with the Appellate Court that the plaintiffs' claim required the fact finder to determine the standard of care regarding the number of supervisors needed to ensure the safety of elementary school students on a playground . . . . The fact finder was not asked to determine solely the required ratio of children to staff members; instead, the question confronting the fact finder, based on the allegations in the complaint and the evidence presented at trial, was whether there was adequate supervision of the children involved in this particular incident. Indeed, even if there had been expert testimony regarding the desired ratio of staff to children and the facts demonstrated that the school met that ratio, the fact finder still may have determined that the supervision was not adequate *because adequacy is not based just on numbers*, and nothing in the complaint limited the plaintiffs'

claim to a mere numerical calculation between the number of students and the number of adults. This was an inadequate supervision case." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 831–32.

In sum, the Supreme Court reversed this court's determination that the plaintiffs' case failed as a matter of law without expert testimony on the number of teachers necessary to supervise adequately the children because (1) the question of adequate supervision was a matter of lay knowledge, and (2) the plaintiffs' claim did not depend on a calculation of the ratio of the number of students to the teachers supervising them at the time the child was injured. As to the second rationale, the Supreme Court determined, in essence, that the children could have been inadequately supervised even if enough teachers were present for the number of children on the playground at that time because, for example, the teachers present may not have been keeping a sufficient lookout and thus failed to exercise due care.

In my view, the Supreme Court's determination in this regard is the law of the case and is fully binding on us. Accordingly, even though I agree with the majority that the trial court's factual finding regarding the ratio of teachers to students present on the playground is clearly erroneous, that error is not fatal to the plaintiff's case because, in our Supreme Court's view, the success of the case was not dependent on that finding.

Although the majority opinion acknowledges this aspect of the Supreme Court's decision, it nonetheless concludes that this error was harmful because it was "inextricably intertwined" with the court's ultimate conclusion that the defendants were negligent. I am inclined to agree with the majority that a reasonable reading of the trial court's short and opaque memorandum of decision, as well as its subsequent articulation, supports such a conclusion. As an intermediate appellate body, however, I am of the view that we are bound by the language in the Supreme Court's opinion that "the *fact finder still may have determined* that the supervision was not adequate because adequacy is not based just on numbers . . . ." (Emphasis added.) *Osborn* v. *Waterbury*, supra, 333 Conn. 832. In making this determination, our Supreme Court reviewed the trial court's memorandum of decision and subsequent articulation and concluded that the trial court's ultimate conclusion that the defendants were negligent was premised, at least in part, on a conclusion that the children on the playground were inadequately supervised regardless of the actual ratio of teachers to children. If our Supreme Court was of the view that the ratio of teachers to children was critical to the trial court's determination of negligence, then the Supreme Court would not have relied upon its second rationale

as to why expert testimony was not required in the present case.

Moreover, the dissenting opinion of Justice Kahn, which was joined by two other justices, states that, "in the present case, the sole basis of the trial court's conclusion that the defendants' supervision of the children was negligent was the supervisor to student ratio . . . ." Id., 845. The Supreme Court's majority opinion directly and explicitly rejects that view: "The dissent is premised on an interpretation of the trial court record with which we fundamentally disagree. The dissent repeatedly asserts that the sole basis of the trial court's conclusion that the defendants' supervision of the children was negligent was the supervisor to student ratio . . . . This conclusion ignores the articulation of the trial court that the injuries and/or losses were as a result of the [city's] failure to exercise proper control over the number of students present. This articulation makes clear that the supervisor to student ratio was not the sole basis of the trial court's conclusion that the defendants were negligent but that, regardless of the supervisor to student ratio, the defendants did not exercise proper control over the students." (Emphasis omitted; internal quotation marks omitted.) Id., 823 n.4.

It is immaterial whether I agree with the majority's characterization of the trial court's decision. I am bound by it, and therefore must conclude that the trial court's factually erroneous determination regarding the ratio of teachers to students is harmless error. Accordingly, I dissent from the majority's conclusion that the defendants are entitled to a new trial on that basis.

II

In light of my conclusion set forth in part I of this dissent, I am obligated to address the defendants' remaining claims on appeal to determine whether they are entitled to any relief on the basis of those claims. Those claims are whether the trial court improperly (1) rejected the defendants' special defense of governmental immunity for discretionary acts and (2) awarded damages for future medical expenses in the absence of any evidence that such expenses were reasonably likely to be incurred. I conclude that the defendants are not entitled to prevail on either of these claims.

A

The defendants claim that the trial court improperly rejected their claim that they were entitled to governmental immunity under the circumstances of this case. The record, however, is inadequate to review this claim and any further articulation by the trial court is not possible because Judge Sheedy, the trial judge in this matter, is fully retired from the bench.

The following procedural history is relevant to this claim. The remaining defendants in this case raised governmental immunity as a special defense. During

their closing argument, they contended that the evidence submitted at trial entitled them to a judgment on that basis. The trial court's memorandum of decision is silent with respect to this special defense. Importantly, although the defendants sought articulation of the trial court's decision on other grounds, they did not ask the trial court to explain whether it had considered this defense, and, if it had done so, the factual basis for having rejected it.

"It is axiomatic that the appellant bears the burden of providing this court with a record adequate to review his claim of error. . . . Furthermore, a claim of error cannot be predicated on an assumption that the trial court acted erroneously. . . . Accordingly, our appellate courts often have recited, in a variety of contexts, that, in the face of an ambiguous or incomplete record, we will presume, *in the absence of an articulation*, a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of the facts were necessary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 396, 210 A.3d 620 (2019); see also *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482, 586 A.2d 1157 (1991) ("[if] an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment").

In the present case, the defendants failed to avail themselves of the opportunity to seek articulation from the trial court on the issue of governmental immunity despite having filed a motion for articulation on other grounds. Thus, this case is unlike *Zaniewski* v. *Zaniewski*, supra, 190 Conn. App. 397–98, in which we concluded that the appellant's failure to seek articulation was excused by the immediate retirement of the trial judge in that case following the issuance of his decision. In this case, the defendants enjoyed an opportunity to seek articulation but did not seek to remedy an obvious lacuna in the trial court's decision. Moreover, in light of Judge Sheedy's retirement from the bench, we are unable to exercise our authority, pursuant to Practice Book §§ 60-5 and 61-10, to order sua sponte articulation on this subject. Accordingly, I conclude that the defendants are not entitled to relief on this claim.

B

I turn next to the defendants' remaining claim on appeal. The defendants assert that the trial court improperly awarded the plaintiffs damages for future medical expenses in the absence of any evidence that such expenses were reasonably likely to be incurred. In my view, the factual premise of this claim is incorrect because I do not read the trial court's memorandum of decision as having awarded damages for future medical

expenses. Moreover, to the extent that the trial court's decision is ambiguous in this regard, the defendants failed to seek articulation or clarification to resolve any ambiguity in the court's decision.

The following facts and procedural history are relevant to this claim. At trial, the plaintiffs offered, and the court admitted, evidence of the minor plaintiff's medical expenses and her pain and suffering that she endured as a result of her injuries. The plaintiffs did not offer evidence of any future medical expenses that she was likely to incur.

The trial court, in its memorandum of decision, made the following findings regarding the minor plaintiff's injuries and resulting economic and noneconomic damages. "On the [day of the incident], [the minor plaintiff] found herself surrounded by a circle of students who physically assaulted her and pushed her into a stone wall, causing injuries to her nose and cheek with resulting facial scarring; she experienced post-traumatic headaches for a sustained period of time thereafter, but the most serious effect of this schoolyard assault was its lingering effect on [her] emerging personality and self-image. . . .

"At trial, it was clear the minor [p]laintiff was conscious of her facial scarring and that she considered that scarring to be her primary—perhaps 'only'—sequela of the incident. In point of fact, the scars have significantly diminished and she continues to present as a lovely appearing young woman. A review of the exhibits has persuaded the court the most serious of her injuries is the effect the incident has had on her behavioral presentation. Since the occurrence, the [minor] [p]laintiff has demonstrated unpleasant—even rude—behavior in the presence of family and other caregivers. She 'acts out' and the suggestion is strong that she presents at school as unfriendly—perhaps even hostile. It is this court's view the [minor] [p]laintiff would benefit from additional behavioral counseling and the substantial award here determined is intended to encourage continued therapy and occupational training.

"[The plaintiffs'] counsel did not provide the court a listing of the medical expenses incurred. The court has carefully reviewed all exhibits and has concluded medical expenses were $7090.47. . . . No evidence was offered to support an ongoing need for continued therapy in any form though the award here determined will permit the same should the family determine future treatment is desirable. The court does not award specific damages for permanency in the absence of medical testimony supportive of the same.

"Judgment enters . . . in favor of the named [p]laintiffs as against the remaining [d]efendants in the total amount of sixty-seven thousand ninety dollars and forty-seven cents ($67,090.47)." (Footnote omitted.)

Although, as noted previously, the defendants moved for articulation on other grounds, they did not seek articulation on the award of damages, including whether the $60,000 portion of the judgment was awarded for pain and suffering or for future medical expenses. The trial court's subsequent articulation did not discuss the manner in which it calculated damages.

The following standard of review governs this claim. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Emphasis omitted; internal quotation marks omitted.) *Cimmino* v. *Marcoccia*, 332 Conn. 510, 522, 211 A.3d 1013 (2019). With respect to an ambiguous decision, and in the absence of a motion for articulation, we assume the trial court acted properly. See, e.g., *Caciopoli* v. *Howell*, 124 Conn. App. 273, 280, 5 A.3d 509 (2010).

With these principles in mind, and for the following reasons, I read the trial court's memorandum of decision as having awarded the plaintiffs $60,000 for noneconomic damages, and not as economic damages for future medical expenses. First, to construe the court's decision as having awarded the $60,000 for future medical expenses would mean it awarded the plaintiffs nothing for the minor plaintiff's pain and suffering despite her significant physical injuries. Such a ruling would be highly unusual, of dubious validity, and seems directly contradicted by the fact that the court mentions the minor plaintiff's headaches in the second paragraph of its decision. The court also makes clear in its decision that the minor plaintiff is suffering emotionally from the incident.

Second, the court arguably recognizes that there was an insufficient factual basis to award future economic damages (and damages for permanency) by stating in its memorandum of decision that "[n]o evidence was offered to support an ongoing need for continued therapy in any form though the award here will permit the same should the family determine future treatment is desirable." Construing the court's decision as a whole, it appears to me that the court's intent was to recognize that, although it did not have a basis to award economic damages for future medical costs, the family was free to use money awarded for pain and suffering, if necessary, to acquire mental health services to ameliorate the behaviors and symptoms the minor plaintiff had been exhibiting since the assault but that had been

left untreated.

Third, the formal, amended judgment issued in conjunction with the trial court's memorandum of decision provides that the "plaintiff . . . sustained damages in the amount of $7090.47 in economic damages and $60,000 award in noneconomic damages." The record supports the court's conclusion that the plaintiffs had incurred $7090.47 in prior medical expenses.

Future medical expenses simply do not fall in the category of noneconomic damages. "Economic damages are monies awarded as compensation for monetary losses and expenses which the plaintiff has incurred, or is reasonably likely to incur in the future, as a result of the defendant's negligence." Connecticut Civil Jury Instructions (2012) 3.4-1, available at http://jud.ct.gov/ JI/Civil/Civil.pdf (last visited May 14, 2020); see also *Duncan* v. *Mill Management Co.*, 308 Conn. 1, 34, 60 A.3d 222 (2013).

At best, the court's decision on this question is ambiguous. The defendants did not seek articulation on this point, and Judge Sheedy, being fully retired, is unavailable to take additional steps to articulate. Accordingly, as I previously recognized with respect to the governmental immunity issue, we must presume that the court acted properly, and, therefore, the defendants cannot prevail on this claim.

For these reasons, I would affirm the judgment of the trial court and respectfully dissent from the decision of the majority to reverse the judgment and remand the case for a new trial.