******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

OCWEN LOAN SERVICING, LLC *v.*
MICHAEL A. MORDECAI ET AL.
(AC 43295)

Prescott, Alexander and Suarez, Js.

*Syllabus*

In 2011, the plaintiff, O Co., sought to foreclose a mortgage on certain real property owned by the defendants, and thereafter filed a motion to substitute N Co. as the plaintiff. In 2017, N Co. filed a motion for summary judgment as to liability only as to its amended complaint. Soon thereafter, N Co. assigned the mortgage to W Co., and filed a motion to substitute W Co. as the plaintiff, which the court granted. For several months, the parties engaged in discovery and litigated discovery disputes, including W Co.'s inability to locate and produce loan payment history records for a period of more than two years. While discovery objections were still outstanding, W Co. reclaimed the motion for summary judgment in 2018. Subsequently, the trial court ordered W Co. to provide additional discovery regarding its search efforts to locate the missing loan payment records. After the completion of discovery, the defendants filed a request to amend their answer and special defenses, which contained seven special defenses to address the incomplete payment records and related issues regarding changes in the amount of escrow payments. The defendants also submitted a caseflow request for a continuance to respond to W Co.'s motion for summary judgment until after the court ruled on their request to amend, arguing, in relevant part, that the amended special defenses, if granted, would have direct significance on the motion for summary judgment, and, therefore, should be considered first. The court, however, denied the requested continuance. W Co. filed an objection to the defendants' request to amend, claiming that the defendants' counsel sought to delay the case, which the court sustained, and thereafter denied the defendants' request to amend without explanation or analysis. In 2019, W Co. filed a reply to the defendants' original special defenses and a certificate of closed pleadings. The court granted W Co.'s motion for summary judgment, finding that no genuine issues of material fact existed as to liability on the note and mortgage, but provided no legal analysis. Thereafter, the court rendered a judgment of strict foreclosure in favor of W Co., from which the defendants appealed to this court. *Held* that the trial court's denial of the defendants' request to amend their answer and special defenses constituted an abuse of discretion: the court failed to provide a sound reason for denying the defendants' request as the granting of the amendment would not have unduly delayed trial or unfairly prejudiced W Co. in light of the facts that the proposed amendment was filed prior to W Co.'s certificate of closed pleadings, the motion for summary judgment had languished on the docket for a significant period of time without being claimed for a hearing by W Co., and no trial date had been scheduled; moreover, it was appropriate procedurally and as a matter of legal strategy for the defendants to wait until discovery was completed as the missing information could have been relevant to the defendants' theory of defense where such discovery related to the amount of the debt owed and the issue of default; furthermore, although the case had been pending for a significant period of time, some of that delay was attributable to W Co. or to its predecessors in interest and nothing in the record supported a finding that the defendants engaged in unreasonable or purely dilatory behavior in defending the foreclosure action; additionally, the defendants sought to have the trial court articulate the factual and/or legal basis for its decision to disallow the amendment but were thwarted in their efforts by the unavailability of the trial judge; accordingly, the trial court's error in failing to allow the defendants to amend their answer and special defenses required the reversal of the court's granting of the motion for summary judgment as to liability and the judgment of strict foreclosure because such judgment was rendered in part on the summary determination of liability.

Argued September 16—officially released December 28, 2021

*Procedural History*

Action to foreclose a mortgage on certain real property of the defendants, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where Wilmington Savings Fund Society, F.S.B., was substituted as the plaintiff; thereafter, the court, *Bruno, J.,* denied the defendants' request to amend their answer and special defenses; subsequently, the court, *Bruno, J.,* granted the substitute plaintiff's motion for summary judgment as to liability only; thereafter, the court, *Bruno, J.,* rendered judgment of strict foreclosure, from which the defendants appealed to this court. *Reversed; further proceedings.*

*Jeremy E. Baver,* for the appellants (defendants).

*Christopher J. Picard,* for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendants, Michael A. Mordecai and Elizabeth M. Keyser, appeal from the judgment of strict foreclosure rendered by the trial court in favor of the substitute plaintiff Wilmington Savings Fund Society, F.S.B., D/B/A Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust (Wilmington).[1] The defendants claim that the court (1) abused its discretion by denying their request to amend their special defenses, (2) improperly granted summary judgment as to liability because a genuine issue of material fact existed regarding whether they had defaulted on the note, and (3) misapplied Practice Book § 23-18 (a)[2] in rendering a judgment of strict foreclosure because they had asserted a defense regarding the amount of the debt owed. We agree with the defendants that the court abused its discretion by not allowing them to amend their special defenses and, consequently, also improperly granted the motion for summary judgment as to liability and rendered a judgment of strict foreclosure without due consideration of those defenses.[3] Accordingly, we reverse the judgment of the court and remand for further proceedings consistent with this opinion.

The record reveals the following relevant undisputed facts and procedural history. In 2007, the defendants purchased residential property in Fairfield. They executed a promissory note in favor of Taylor, Bean & Whitaker Mortgage Corporation (TB&W) in the principal amount of $340,000 (note). As security for the note, the defendants executed a mortgage on the Fairfield property in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for TB&W (mortgage).[4] TB&W later endorsed the note in blank.

In August, 2011, Ocwen Loan Servicing, LLC (Ocwen), as successor in interest to TB&W, commenced the underlying mortgage foreclosure action. In its complaint, Ocwen alleged that the mortgage had been "assigned to [it] by virtue of an assignment of mortgage," and that it was "the holder of [the] note and mortgage." Ocwen further alleged that the note was in default and that it had elected to accelerate the balance due on the note, declare the note due in full, and foreclose the mortgage securing the note.

For more than four years, the parties participated in court-sponsored foreclosure mediation.[5] The defendants, however, were unable to obtain a loan modification, and the mediation was terminated by order of the court on January 22, 2016.

On April 11, 2016, Ocwen filed a motion to default the defendants for failure to plead. It also filed a demand for a disclosure of defenses. The clerk initially granted the motion for default. That same day, however, the defendants filed a disclosure of defenses and a request

to revise the complaint. As a result, the clerk vacated the default against the defendants. One of the revisions sought by the defendants was for Ocwen to provide more factual details regarding its allegation that it currently was the holder of the note. Ocwen filed an objection, which the court sustained.

Soon thereafter, however, Ocwen filed a motion to substitute Nationstar Mortgage, LLC (Nationstar), as the plaintiff. Ocwen stated in its motion that it had assigned the subject mortgage deed and note to Nationstar. Attached to the motion to substitute was a copy of a page from the Fairfield land records showing that an assignment of mortgage from Ocwen to Nationstar had been executed on October 29, 2013, and subsequently recorded on November 18, 2013.[6] The defendants objected to the substitution, arguing, inter alia, that the assignment only referred to the mortgage and not the note. Further, the defendants argued that, in objecting to their request to revise, Ocwen had made admissions to the court about its own status as the holder of the note and that it had the right to enforce the mortgage that appeared to conflict with the assignment attached to the motion to substitute. The court sustained the defendants' objection and denied the motion to substitute, stating: "There is no indication that Nationstar is the holder or owner of the note."

On October 26, 2016, Ocwen filed a motion for judgment of strict foreclosure and a preliminary statement of the debt calculated as of October 5, 2016. According to that statement, the principal and accrued interest on the note totaled $481,708.53. Ocwen simultaneously filed an appraisal that indicated that the fair market value of the subject property was $430,000. Ocwen also filed a second motion to default the defendants for failure to plead.

The clerk denied the motion for default, noting that, on November 1, 2016, the defendants filed a motion to strike the foreclosure complaint. In their motion to strike, the defendants argued, in relevant part, that the complaint failed to state a cause of action for foreclosure because Ocwen had failed to adequately plead regarding its status as the holder of the note or to identify the precise nature of the alleged default. Ocwen filed an opposition to the motion to strike and also renewed its motion to substitute Nationstar as the plaintiff. The renewed motion to substitute contained a representation that Nationstar, through its counsel, was in possession of the note, which was endorsed in blank, and, thus, Nationstar was the current holder of the note.

On January 5, 2017, the court granted the defendants' motion to strike the foreclosure complaint, agreeing with the defendants that the original complaint lacked sufficient allegations regarding "prima facie elements of a cause of action for foreclosure of a mortgage

. . . ." The court also granted Ocwen's motion to substitute Nationstar as the plaintiff by virtue of Ocwen's allegation that it had assigned the subject mortgage to Nationstar on October 29, 2013, and that Nationstar, through its counsel, was in possession of the note endorsed in blank. Nationstar then filed an amended complaint on January 11, 2017, which is the operative complaint in this action.

The defendants filed a timely answer to the amended complaint on February 2, 2017. The defendants also asserted four special defenses at that time.[7]

On June 22, 2017, Nationstar filed a motion for summary judgment as to liability only. On July 6, 2017, the defendants filed a motion to dismiss the foreclosure action in which they argued that the court lacked subject matter jurisdiction because Nationstar was neither the owner of the debt nor the holder of the note. Nationstar sought and was granted an extension of time to respond to the motion to dismiss, following which, on August 22, 2017, it filed a motion to substitute Wilmington as the plaintiff, stating that it had assigned the subject mortgage to Wilmington, which currently was in possession of the note. A copy of the assignment of mortgage from Nationstar to Wilmington was attached and showed that the assignment had been executed on July 6, 2017, the day the defendants filed their motion to dismiss.

The court granted the motion to substitute Wilmington as the plaintiff on September 14, 2017. On January 21, 2018, the court denied the defendants' motion to dismiss. Over the next several months, the parties exchanged discovery and litigated several discovery disputes. The parties argued their outstanding discovery disputes to the court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee, on May 29, 2018, which issued a ruling on September 23, 2018. Among the issues to be resolved was Wilmington's inability to locate and produce loan payment history records for a period of more than two years starting from the loan origination date through August 19, 2009. Judge Jennings stated in his discovery ruling that the defendants have provided a payment history that "admittedly has a gap or gaps," and that Wilmington "is unable to find payment history records for the gap period(s)." In relevant part, the court ordered Wilmington to provide the defendants with additional discovery regarding its search efforts to locate the missing loan payment records.

On December 26, 2018, following the completion of discovery, the defendants filed a request to amend their answer and special defenses. The attached proposed amended pleading contained seven special defenses, the primary basis of which were to address the incomplete payment records and related issues regarding changes in the amount of escrow payments. The first and second amended special defenses alleged unclean

hands, asserting generally that Wilmington and its predecessors in interest knew about the incomplete payment history, and that the amount of the claimed debt was inaccurate, which unduly prejudiced the defendants both during mediation and in defending against the foreclosure action. The third special defense asserted that the defendants had not been given proper notice of the alleged default or other requisite statutory notice requirements. The fourth special defense sounded in payment pursuant to General Statutes § 42a-3-602 and alleged that the defendants "were current on the correctly calculated mortgage payment amounts." The fifth special defense alleged a failure to comply with regulations promulgated under the federal Real Estate Settlement Procedures Act of 1974 (RESPA), in particular 12 C.F.R. § 1024.38, which requires loan servicers to provide borrowers with accurate and current information regarding a borrower's mortgage loan. The sixth special defense sounded in fraud. The seventh special defense asserted, inter alia, that the note was endorsed in blank by someone "not authorized to endorse the instrument."

The defendants also filed a separate caseflow request that sought a continuance to respond to and argue the motion for summary judgment as to liability until after the court had ruled on their request to amend their special defenses. Judge Jennings issued an order on December 28, 2018, denying the requested continuance. The court explained that, unless an objection to a request to amend is filed within fifteen days, it is deemed granted by consent; see Practice Book § 10-60 (a) (3); and no such objection had been filed. The court ordered the parties to appear on January 2, 2019, as previously scheduled, "with a timetable for hearing the motion for summary judgment, which has been pending for more than eighteen months." Wilmington thereafter filed an objection to the defendants' request to amend their special defenses.

On January 7, 2019, the court ordered the defendants to file any opposition to the motion for summary judgment within fourteen days of the court's ruling on the objection to their request to amend, which was scheduled for a hearing on January 22, 2019. Following that hearing, on January 30, 2019, the court, *Bruno*, *J.*, denied the defendants' request to amend their special defenses without any explanation or analysis. Wilmington filed a reply to the defendants' original special defenses on February 1, 2019, denying all allegations therein. The same day, Wilmington filed a certificate of closed pleadings.

On February 13, 2019, the defendants filed their memorandum in opposition to the motion for summary judgment. Wilmington thereafter filed a reply to the opposition. Judge Bruno heard argument on the motion for summary judgment on February 19, 2019. At the hear-

ing, the court asked the defendants to submit a supplemental memorandum of case law that supported their legal arguments. The defendants complied with that request.

On April 25, 2019, the court, *Bruno*, *J.*, issued an order granting the motion for summary judgment as to liability. The court provided no legal analysis for its ruling, including failing to address directly any of the defendants' original special defenses. Rather, the court provided the following statement only: "When counsel for [Wilmington] and the defendant[s] appeared at short calendar in February to present their respective arguments on this motion for summary judgment . . . this case had been pending since 2011. Since that hearing, there have been many more pleadings filed . . . addressed to [the motion for summary judgment], and . . . specifically to information asserted by defense counsel during oral argument on the motion for summary judgment. The court has had the benefit of the able oral arguments of counsel, as well as the pleadings, and has considered all of this in reaching its decision that summary judgment should enter for the plaintiff. . . . The motion for summary judgment having been heard, the court finds that there are no genuine issues of material fact. The motion is granted as to liability. Judgment may enter for [Wilmington] on the complaint."

On April 29, 2019, the court, *Bellis*, *J.*, issued a dormancy dismissal order that required Wilmington "to file the appropriate motion and obtain judgment on or before [July 29, 2019], or the case will be dismissed for failure to prosecute with due diligence." Wilmington, on July 23, 2019, filed a caseflow request asking the court to grant it an exemption to the court's dormancy order or, alternatively, to write in the matter on the upcoming foreclosure calendar for July 29, 2019. In support of its request, Wilmington stated that it "has all the requisite documents to obtain judgment including an updated appraisal and executed affidavit of debt. Given the aforementioned, it would be an exercise of futility and would unduly burden the court's docket to dismiss this matter and require [Wilmington] to commence a new action." The following day, the court clerk issued an order that the motion for judgment would be written on the foreclosure docket for July 29, 2019.

On July 25, 2019, Wilmington filed a foreclosure worksheet, an affidavit of debt, and an affidavit regarding attorney's fees. The next day, the defendants filed a memorandum in opposition to the motion for judgment of strict foreclosure.[8] Wilmington filed a reply to the opposition that same day. On the day of the July 29, 2019 hearing, Wilmington filed a motion for extension of time and a caseflow request arguing, in essence, that it sought relief from the dormancy order in the event that the court determined additional argument would

be necessary or was otherwise inclined to hold off the hearing on the motion for judgment of strict foreclosure.

The court, *Bruno, J.*, proceeded with the hearing on the motion for judgment of strict foreclosure, following which it rendered judgment in favor of Wilmington. The court made findings as to the amount of the debt and the fair market value of the property, and it set law days to commence on October 29, 2019. The court's order did not address the substance of the defendants' objections.[9] The defendants timely filed the present appeal.

Shortly after the appeal was filed, on October 4, 2019, Wilmington filed a motion for articulation asking Judge Bruno to provide the factual and legal basis for her decision to grant the motion for summary judgment as to liability. Wilmington, citing this court's then recent decision in *Bayview Loan Servicing, LLC* v. *Frimel*, 192 Conn. App. 786, 218 A.3d 717 (2019), argued that the court's summary judgment ruling had failed to include any findings by the court that Wilmington had established a prima facie case for foreclosure or met its evidentiary burden of establishing in the first instance that there were no genuine issues of material fact.[10]

On February 4, 2020, Judge Stevens issued the following case management order: "This motion for articulation, and all other matters [in] this case involving Judge Bruno, are hereby reassigned to Judge Spader." Judge Spader soon thereafter issued an order effectively granting the motion for articulation and articulating what it speculated to be the factual and legal basis for Judge Bruno's decision to grant summary judgment as to liability. The court indicated that it had read Judge Bruno's order on the motion for summary judgment, reviewed all the applicable pleadings, and listened to a recording of oral argument. It acknowledged that Judge Bruno did "not proactively make a statement in her order of the plaintiff's setting forth its prima facie case," but the court nonetheless concluded that "[i]t is clear, however, that the plaintiff did set forth its prima facie case . . . ." Judge Spader then proceeded to set forth his analysis for why Wilmington was entitled to summary judgment. In addition to concluding that Wilmington had established its entitlement to summary judgment, the court also concluded that "[t]he defendants simply fail to establish their special defenses."[11] The defendants filed a motion for further articulation directed at Judge Spader's "articulation," which, according to the defendants, contained "factual detail[s] not present in the original order and case law that was not briefed or argued by the parties." The court denied the defendants' motion.

This court later granted the defendants permission to file a late motion for articulation directed at Judge Bruno's denial of their request to amend their special

defenses. Specifically, the defendants asked the trial court to articulate the factual and legal basis for denying their request to amend and to state whether the court had found that the proposed special defenses were valid under *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 212 A.3d 226 (2019).[12] This motion for articulation again was referred to Judge Spader, who denied the motion, stating in relevant part that "while Judge Bruno is unavailable presently, had the movant requested an articulation from her on a timelier basis, she may have been able to provide one. This court is unable to provide more articulation but posits that none is really necessary. A summary judgment motion was pending and it was then that the defendant[s] wanted to amend its defenses, the court would not then allow the *late prejudicial* amendment, which was in its discretion to do."[13] (Emphasis added.) The defendants filed a motion for review of the denial of their motion for articulation. This court granted the motion for review but denied the relief requested therein.[14]

With the following background in mind, we turn to our discussion of the defendants' first claim on appeal. The defendants claim that the court abused its discretion by denying their request to amend their special defenses to the foreclosure complaint. The defendants argue that the amendments would not cause delay and that the amendments were necessary "to conform with facts verified by the final resolution of several discovery disputes." For the reasons that follow, we agree with the defendants.

General Statutes § 52-130 provides: "Parties may amend any defect, mistake or informality in the pleadings or other parts of the record or proceedings. When either party supposes that in any part of the pleadings he has missed the ground of his plea, and that he can plead a different plea that will save him in his cause, he may change his plea, answer, replication or rejoinder, as the case may be, and plead anew, and the other party shall have reasonable time to answer the same; and, in any case when a party amends or alters any part of the pleadings or pleads anew, if it occasions any delay in the trial or inconvenience to the other party, he shall be liable to pay costs at the discretion of the court. Any court may restrain the amendment or alteration of pleadings, so far as may be necessary to compel the parties to join issue in a reasonable time for trial." See also Practice Book § 10-60. Thus, by statute, a party, as a matter of right, may make substantive amendments to any pleading. That right is subject only to the court's discretion to award costs or to limit an amendment if doing so is *necessary* to prevent undue delay of a trial.

"The granting or denial of a motion to amend the pleadings is a matter within the trial court's discretion. . . . In the interest of justice courts are liberal in permitting amendments; *unless there is a sound reason,*

*refusal to allow an amendment is an abuse of discretion. . . .* The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case. The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Citations omitted; emphasis added; internal quotation marks omitted.) *Baker* v. *Cordisco*, 37 Conn. App. 515, 522–23, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995).

"In determining whether there has been an abuse of discretion [in granting or denying an amendment], much depends on the circumstances of each case. . . . In the final analysis, the court will allow an amendment unless it will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues, or if there has been negligence or laches attaching to the offering party." (Internal quotation marks omitted.) *Miller* v. *Fishman*, 102 Conn. App. 286, 293, 925 A.2d 441 (2007), cert. denied, 285 Conn 905, 942 A.2d 414 (2008).

"The court's discretion [to deny an amendment] is not unfettered; it is a legal discretion subject to review. . . . The trial court's discretion imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." (Citation omitted; internal quotation marks omitted.) Id., 291–92.

"In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment or to his adversary by granting the motion, with the resultant delay." (Internal quotation marks omitted.) *Jacob* v. *Dometic Origo AB*, 100 Conn. App. 107, 113, 916 A.2d 872, cert. granted, 282 Conn. 922, 925 A.2d 1103 (2007) (appeal withdrawn August 7, 2007). The law of this state favors courts allowing amendments in the absence of some sound basis for not doing so; id., 111; particularly if the record fails to disclose some significant injustice or prejudice to the nonmoving party. Id., 114; see also *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 216–17, 455 A.2d 857 (1983) ("a trial court may be well-advised to exercise leniency when amendments are proffered in response to a motion for summary judgment, rather than on the eve of trial"); *Miller* v. *Fishman*, supra, 102 Conn. App. 286 (holding that it was abuse of discretion for court to rule on motion for summary judgment without first considering pending request to amend because proposed amendment would not have unduly delayed trial or unfairly prejudiced other party); but see *Citizens*

*National Bank* v. *Hubney*, 182 Conn. 310, 313, 438 A.2d 430 (1980) (court properly exercised discretion by not permitting amendment "after the pleadings had been closed and the motion for summary judgment filed"). We are mindful that, "[a]lthough it is not [the] habit [of appellate courts] to disturb a trial court's determination of whether an amendment should be permitted, we have done so on rare occasions when allowing the rul[ing] to stand would work an injustice to one of the parties." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 369, 659 A.2d 172 (1995). Our careful review of the record before us leads us to conclude, for the following reasons, that this is such a case.

First, the pleadings had not yet been closed at the time the defendants sought to amend their answer and special defenses. Wilmington in fact had not yet filed *any response to the original special defenses* raised by the defendants. Accordingly, the court could not reasonably have viewed the need to respond to the amended answer and special defenses as an "inconvenience to the other party . . . ." General Statutes § 52-130. Moreover, although Wilmington's predecessor, Nationstar, had filed a motion for summary judgment, that motion already had languished on the docket for a significant period of time without being claimed for a hearing by Wilmington.

Second, it was appropriate procedurally and as a matter of legal strategy for the defendants to wait to fully develop and perfect their special defenses until Wilmington had complied with their discovery request. They made their request to amend promptly thereafter. It was reasonable for the defendants to wait to amend their special defenses until discovery was completed because information regarding the missing payment records may have proved relevant to the defendants' theory of defense that escrow payments had been improperly calculated and increased, which had a bearing on both the amount of any debt owed and the issue of default. The request to amend also cannot reasonably be construed as having been made "on the eve of trial . . . ." *Conference Center Ltd.* v. *TRC*, supra, 189 Conn. 217. No trial date had been scheduled, and the court could have permitted the amendments and then allowed Wilmington sufficient time to respond without "occasion[ing] any delay in the trial . . . ." General Statutes § 52-130.

Third, to the extent that the case had been pending for a significant period of time, some of that delay fairly is attributable to Wilmington or its predecessors in interest rather than to the defendants. Certainly, the underlying foreclosure action had been on the trial court's docket for many years, and the court had a legitimate interest in advancing the case. A significant portion of the delay in this case, however, nearly four

years, was the result of the lengthy court-sponsored mediation process. Moreover, the multiple transfers of the mortgage during the pendency of the action and the resulting need to substitute plaintiffs resulted in additional delays that were outside of the control of the defendants. Nothing in the record before us would support a finding that the defendants engaged in unreasonable or purely dilatory behavior in defending the foreclosure action, certainly none that would justify disallowing an amendment of their answer and special defenses prior to the close of pleadings. For example, the record does not reflect that the defendant filed multiple and frivolous bankruptcy proceedings, improper interlocutory appeals, or excessive and unproductive motions. Although the defendants engaged in motion practice, they only filed pleadings permitted under our rules of practice and in the proper order. See Practice Book §§ 10-6 and 10-8. Furthermore, the defendants' motions were meritorious, resulting, for example, in the striking of the original complaint. The operative complaint in this matter was not filed until 2017, a few years prior to the judgment of strict foreclosure.

Finally, we are mindful that the defendants sought to have the court articulate the factual and/or legal basis for its decision to disallow the defendants' amendment, but they were thwarted in their efforts by the unavailability of Judge Bruno. "[O]ur appellate courts often have recited . . . that, in the face of an ambiguous or incomplete record, we will presume, *in the absence of an articulation*, a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of the facts were necessary." (Emphasis in original.) *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 396, 210 A.3d 620 (2019); see also *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482, 586 A.2d 1157 (1991). This court has made clear, however, that the adoption of such a presumption of correctness is not warranted in a case such as the present one "in which a party has done all that can reasonably be expected to obtain an articulation but has been thwarted through no fault of its own." *Zaniewski* v. *Zaniewski*, supra, 397.[15]

In sum, the court failed to provide any explanation, let alone a " 'sound reason,' " for denying the defendants' request to amend their special defenses. *Baker* v. *Cordisco*, supra, 37 Conn. App. 522. The record reflects no such reason. As previously stated, at the time they made their request, the pleadings had not yet closed. Although a motion for summary judgment had been filed, the motion had not been calendared for a hearing on its merits. No trial date had been set, and, although the trial court had an interest in moving the case forward, this was not a matter in which the defendants had engaged in dilatory defense tactics. For all these reasons, we conclude that the court's denial of the defen-

dants' request to amend their answer and special defenses was an abuse of discretion.[16]

The court's error in failing to allow the amended answer and special defenses requires the reversal of the court's subsequent order granting the motion for summary judgment. "[B]ecause any valid special defense raised by the defendant ultimately would prevent the court from rendering judgment for the plaintiff, a motion for summary judgment should be denied when any [special] defense presents significant fact issues that should be tried." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 745, 196 A.3d 328 (2018). Furthermore, because the judgment of strict foreclosure was rendered in part on the summary determination of liability, that judgment likewise cannot stand.

The judgment of strict foreclosure, the summary judgment as to liability only, and the trial court's denial of the defendants' request to amend their special defenses are reversed, and the case is remanded with direction to grant the defendants' request to amend the answer and special defenses and for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] The original plaintiff, Ocwen Loan Servicing, LLC, assigned the subject mortgage deed to Nationstar Mortgage, LLC (Nationstar). Nationstar later was substituted as the plaintiff. Nationstar subsequently assigned the mortgage to Wilmington, which was substituted as the plaintiff for Nationstar. In this opinion, for clarity purposes, we refer to the original plaintiff and the substitute plaintiffs by name.

[2] Practice Book § 23-18 (a) provides: "In any action to foreclose a mortgage *where no defense as to the amount of the mortgage debt is interposed*, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto." (Emphasis added.)

[3] Because we reverse the granting of the motion for summary judgment as to liability and the resulting judgment of strict foreclosure on the ground that the court improperly failed to allow the defendants to amend their special defenses, it is unnecessary to reach the other claims of error raised by the defendants.

[4] "MERS acts as the nominal mortgagee for the loans owned by its members . . . which include originators, lenders, servicers, and investors . . . . [If a] member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans. . . . If, on the other hand, a MERS member transfers an interest in a mortgage loan to a non-MERS member, MERS no longer acts as the mortgagee of record and an assignment of the security instrument to the non-MERS member is drafted, executed, and typically recorded in the local land recording office." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 122 n.1, 74 A.3d 1225 (2013).

[5] During the pendency of mediation, "[a] litigation hold is placed on the case, during which time a mortgagee is prohibited from making any motion, request or demand of a mortgagor, except as it may relate to the mediation program; General Statutes § 49-31*l* (c) (6); and no judgment of strict foreclosure or foreclosure by sale may be rendered against the mortgagor during the mediation period. General Statutes §§ 49-31*l* (c) (6) and 49-31n (c) (9)." *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 677–78 n.17, 212 A.3d 226 (2019).

[6] Ocwen's motion to substitute suggests that the defendants' earlier attempt to obtain revisions regarding the identity of the holder of the note was more than appropriate.

[7] The first special defense asserted unclean hands premised on Nationstar or intervening holders of the note having knowingly presented false documents to the court. The second special defense asserted that the defendants previously had paid off the note in full to a prior holder or Nationstar had "received payments sufficient to pay off the entire alleged outstanding balance." The third special defense asserted that the note was endorsed with an unauthorized signature. Finally, the fourth special defense alleged that Nationstar lacked standing to prosecute the foreclosure action.

[8] Specifically, the defendants raised the following six arguments: "(1) The defendants dispute the amount of the debt and raised a defense. Practice Book § 23-18 does not apply and a decision that relies on [the affidavit of debt] is improper. An evidentiary hearing must be held to decide the amount of the debt.

"(2) The defendants dispute the amount of the debt and the appraised value of the house and believe that it is undervalued by at least $20,000.

"(3) The [affidavit of debt] is hearsay, it is contradicted by [Wilmington's] previous admissions, is otherwise unreliable, and it fails to prove the amount of the debt.

"(4) The affidavit of attorney's fees fails to meet any showing of reasonableness and should be thrown out.

"(5) [Wilmington's] attempt to rush to judgment before the dormancy dismissal order enters has severed the defendants' rights to a fair hearing.

"(6) As a matter of equity, the defendants should not be liable, and [Wilmington] should not experience a windfall for the delay caused by the . . . multiple substitutions, delays, and failure to diligently prosecute this matter that has been pending for over seven years. The court should adjust the amount of the damages accordingly."

[9] On August 12, 2019, Judge Bruno issued an order directed at the defendants' opposition to the motion for judgment of strict foreclosure, stating simply that the opposition was marked "off" and citing to the "[c]ourt's entry of strict foreclosure on July 29, 2019."

[10] In *Bayview Loan Servicing, LLC* v. *Frimel*, supra, 192 Conn. App. 786, the trial court granted the plaintiff mortgagee's motion for summary judgment as to liability only and subsequently rendered a judgment of foreclosure by sale. Id., 791–92. This court reversed the judgment. Id., 788. It determined, in relevant part, that the trial court had improperly granted summary judgment solely on the ground that the defendant mortgagor had not timely filed any opposition to summary judgment. Id., 793. This court explained: "[T]he court was required to consider, in the first instance, whether the plaintiff, as the movant, had satisfied its burden of establishing its entitlement to summary judgment. *If the plaintiff had failed to meet its initial burden*, it would not matter if the defendant had not filed any response." (Emphasis added.) Id., 795.

[11] The defendants, of course, had no obligation to "establish their special defenses" in opposing summary judgment, but only needed to raise a genuine issue of material fact with respect to one or more of their defenses.

[12] In *Blowers*, our Supreme Court discussed the standard that courts apply in evaluating counterclaims and special defenses asserted by defendants in mortgage foreclosure actions, clarifying that the so-called "making, validity or enforcement test" that routinely had been applied by lower courts is "nothing more than a practical application of the standard rules of practice that apply to all civil actions to the specific context of foreclosure actions." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 667; see also Practice Book § 10-10. The Supreme Court specifically held that "a proper construction of 'enforcement' [under that test] includes allegations of harm resulting from a mortgagee's wrongful postorigination conduct in negotiating loan modifications, when such conduct is alleged to have materially added to the debt and substantially prevented the mortgagor from curing the default." (Footnote omitted.) *U.S. Bank National Assn.* v. *Blowers*, supra, 667. The court observed that "appellate case law recognizes that conduct occurring after the origination of the loan, after default, and even after the initiation of the foreclosure action may form a proper basis for defenses in a foreclosure action." Id., 672. The court continued: "[A]llegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforce-

ment . . . . Such allegations, therefore, provide a legally sufficient basis for special defenses in [a] foreclosure action." (Citations omitted; internal quotation marks omitted.) Id., 675–76.

[13] We note, on the basis of our review of the record, that Judge Bruno, who denied the request to amend without comment, never made any findings that the defendants' request to amend, which was made prior to the close of pleadings, was somehow untimely or made solely for the purpose of delay. Nor did the court indicate that granting the request would have unduly prejudiced Wilmington.

[14] Although the defendants did not file a motion for review of Judge Spader's earlier articulation or challenge in their later motion for review Judge Spader's authority to articulate decisions rendered by Judge Bruno, we are aware of no statute or rule of practice that authorizes an articulation of a trial court's ruling by anyone other than the judge who rendered it. Practice Book § 66-5 expressly provides that, upon the filing of a motion for articulation, "[t]he appellate clerk shall forward the motion . . . *to the trial judge who decided, or presided over, the subject matter of the motion . . .* for a decision on the motion. . . ." (Emphasis added.) We have repeatedly stated that a request for articulation is not intended to provide the trial court with an opportunity to substitute a new decision or to change the reasoning or basis for a prior decision. See, e.g., *Lusa* v. *Grunberg*, 101 Conn. App. 739, 743, 923 A.2d 795 (2007). If a judge other than the one who rendered a decision is permitted to attempt to divine from its review of the record the factual and legal basis for a decision, the result, effectively, is a wholly new decision. Because there is no way to know whether that new decision was rendered on the same factual and legal basis as the original, we disavow the procedure followed in this case.

[15] In *Zaniewski*, this court declined to apply any presumption of correctness to the trial court orders issued as part of a judgment of dissolution of marriage. Like in the present case, the court's decision in *Zaniewski* was "devoid of any factual findings in support of its conclusions." *Zaniewski* v. *Zaniewski*, supra, 190 Conn. App. 397. The appellant in *Zaniewski* filed a motion for an articulation but was prevented from obtaining one by the immediate retirement of the trial judge in that case following the issuance of his decision. Id., 391. This court reasoned, in part, that an action to dissolve a marriage is an equitable proceeding and, accordingly "principles of equity must guide the entire process, including any appeal." Id., 397. To the extent that our decision in *Zaniewski* turned on the equitable nature of the underlying proceedings, we note that a foreclosure action is also equitable in nature. See *People's United Bank* v. *Sarno*, 160 Conn. App. 748, 754, 125 A.3d 1065 (2015).

[16] Nothing in this opinion should be read as commenting on the merits of the defendants' proposed amended pleading.