******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE *v.* SHERI A. SPEER ET AL.
## (AC 46046)

Bright, C. J., and Elgo and Sheldon, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant S, who filed an answer and ten special defenses. Approximately two years later, S filed a request for leave to amend her answer and special defenses to include a five count counterclaim, seeking damages for, inter alia, alleged property damage and trespass. In the counterclaim, S claimed that the plaintiff's agents had, inter alia, broken a door to the property, taken certain construction materials from it, and replaced the locks, which S alleged interfered with her ability to rent and repair the property. The plaintiff objected to S's request, arguing that her allegations were unfounded, that the counterclaim was not made on the basis of new information, and that S failed to show good cause to allow the amendment at that stage of the proceedings. The trial court sustained the plaintiff's objection. S filed a second request for leave to amend her answer, which included a counterclaim asserting the same five counts, but added that the plaintiff's agents had more recently trespassed on her property. The trial court again sustained the plaintiff's objection to the request, which contained the same grounds as the first objection. The plaintiff thereafter withdrew the foreclosure action. S appealed to this court, claiming that the trial court abused its discretion in sustaining the plaintiff's objections because her proposed amendments were timely and would not have prejudiced the plaintiff. *Held*:

1. The plaintiff could not prevail on its claim that this appeal should be dismissed as moot because, having withdrawn its action before any counterclaim had been filed against it, no practical relief could be afforded to S on the basis of any such unfiled claim: this court concluded that the appeal was not moot because it could provide practical relief to S if it decided her claim on the merits, despite the plaintiff having withdrawn its foreclosure action, namely, that, if this court were to determine that S should have been permitted to file her proposed counterclaim, it could remand this case to the trial court with direction to restore the case to the docket and conduct further proceedings with respect to S's proposed counterclaim; moreover, although S's proposed counterclaims were not yet filed when the action was withdrawn because the court had effectively denied her requests for leave to amend her answer to assert the proposed counterclaims when it sustained the plaintiff's objections, the plaintiff's withdrawal would not have impaired

her right to proceed with the proposed counterclaims had she otherwise been permitted to file them.

2. S could not prevail on her claim that the trial court abused its discretion in sustaining the plaintiff's objections to her requests for leave to amend her answer to assert a counterclaim: the trial court record provided a sound basis for the court's conclusion that permitting S's amendments would have caused an unreasonable delay, as the foreclosure action had already been pending for approximately two years, and, during that time, S had filed several unmeritorious motions in addition to two interlocutory appeals that had been dismissed, and the court could have considered S's request to amend her answer to be an additional dilatory tactic; moreover, S's proposed counterclaims were not based on information that she recently had obtained or learned after filing her answer, thereby potentially making it unreasonable for her to wait for almost two years after she was served before seeking leave of court to assert the counterclaims, and, although S alleged that agents of the plaintiff had recently trespassed onto the property, she also alleged that there were at least fifty forceable entries onto the property during the term of her mortgage, and S did not claim that she only recently learned of the alleged misconduct underlying her proposed counterclaims at the time she filed her request for leave to amend her answer, and, thus, the court could have considered that S's requests were not made seasonably.

Argued February 1—officially released May 14, 2024

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Calmar, J.*, sustained the plaintiff's objections to the named defendant's two requests for leave to amend her answer to assert a counterclaim; thereafter, the plaintiff withdrew the action, and the named defendant appealed to this court. *Affirmed.*

*Sheri A. Speer*, self-represented, the appellant (named defendant).

*Victoria L. Forcella*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. Following the unconditional withdrawal of this foreclosure action by the plaintiff,[1] Deutsche Bank National Trust Company, as trustee for HSI Asset Securitization Corporation Trust 2006-OPT4, Mortgage Pass-Through Certificates, Series 2006-OPT4, the defendant Sheri A. Speer[2] appeals from the trial court's decisions sustaining the plaintiff's objections to the defendant's two prior requests for leave to amend her answer to assert a counterclaim. On appeal, the defendant claims that the court abused its discretion in sustaining the plaintiff's objections because her proposed amendments were timely and would not have prejudiced the plaintiff. We disagree with the defendant's claims of error and, accordingly, affirm the trial court's decisions sustaining the plaintiff's objections to the requests for leave to amend.

The following procedural history is relevant to this appeal. On March 20, 2019, the plaintiff served the defendant with a summons and complaint, seeking to foreclose a mortgage on a parcel of real property owned by the defendant located at 107 Oakridge Street in Norwich (property). In its complaint, the plaintiff alleged that the defendant had executed and delivered to Option One Mortgage Corporation, its predecessor in interest, a note in the amount of $159,800, of which the plaintiff

---

[1] "Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment . . . ." (Internal quotation marks omitted.) *Doe* v. *Bemer*, 215 Conn. App. 504, 513–14, 283 A.3d 1074 (2022); see also, e.g., *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 471 n.16, 974 A.2d 626 (2009).

[2] The Second Injury Fund also was named as a defendant in the present action, as the plaintiff alleged that it may claim an interest in the property by virtue of a real estate lien in the amount of $24,327.15 related to a workers' compensation matter. Because the Second Injury Fund is not participating in this appeal, all references in this opinion to the defendant are to Sheri A. Speer.

became the holder, secured by a mortgage on the property. The plaintiff further alleged that the note and mortgage were in default due to the defendant's nonpayment of monthly installments due thereunder since June 1, 2018. On March 20, 2020, the self-represented defendant filed an answer to the plaintiff's complaint and asserted ten special defenses.

On January 25, 2021, the defendant filed a request for leave to amend her answer and special defenses to include a five count counterclaim, to which she attached a copy of her proposed amended pleading. The proposed five count counterclaim sought damages for (1) property damage, (2) trespass, (3) fraud, (4) conversion and civil theft, and (5) a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The alleged factual basis for the defendant's counterclaim was that agents of the plaintiff had forcibly entered the property on at least fifty occasions, most recently on December 23, 2020. The defendant alleged that the plaintiff's agents had, among other things, broken a door to the property, taken certain construction materials from it, and replaced its locks, all of which interfered with her ability to rent and repair the property.

The plaintiff filed an objection to the defendant's request for leave to amend, arguing that the defendant's allegations were unfounded and that the defendant had failed to show good cause to allow an amendment at that stage of the proceedings, approximately two years after the action had been commenced, where the counterclaim was not made on the basis of new information. The court issued an order on February 22, 2021, sustaining the plaintiff's objection, thereby denying the defendant's request to amend. The defendant subsequently filed a motion for reconsideration, which the court denied.

On June 9, 2021, the defendant filed a second request for leave to amend her answer. The proposed amended answer attached to that request included a counterclaim setting forth the same five counts as the defendant's first proposed counterclaim, with only one additional factual allegation: that the plaintiff's agents had again trespassed on the property on or about May 26, 2021. The plaintiff filed an objection to the defendant's second request for leave to amend, arguing that that request was nearly identical to her first such request and, thus, that it should be denied for the same reasons as the first request. By order dated June 28, 2021, the court sustained the plaintiff's objection to the defendant's second request for leave to amend, thereby denying that request. The plaintiff subsequently withdrew the foreclosure action. This appeal followed.

After filing the present appeal, the defendant filed a motion for articulation requesting an explanation from the trial court for its denial of both of her requests for leave to amend, which the court denied.[3] The defendant subsequently filed with this court a motion for review of the denial of her motion for articulation. This court granted the defendant's motion for review but denied the relief requested therein.

I

Before we address the merits of the defendant's claim on appeal, we must address the plaintiff's claim that we should dismiss this appeal as moot. Specifically, the plaintiff, relying on *Sovereign Bank* v. *Harrison*, 184 Conn. App. 436, 194 A.3d 1284 (2018), claims that, because it withdrew the underlying foreclosure action before any counterclaim had been filed against it, no

---

[3] The defendant also filed a "notice of demand for decision," which the court denied. The court explained: "A memorandum of decision is not required for the orders requested as these orders are not covered by Practice Book § 64-1 (a)."

practical relief can now be afforded to the defendant on the basis of any such unfiled claim. "Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties." (Internal quotation marks omitted.) *GMAT Legal Title Trust 2014-1* v. *Catale*, 213 Conn. App. 674, 694, 278 A.3d 1057, cert. denied, 345 Conn. 905, 282 A.3d 980 (2022). "[M]ootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve before we may reach the merits of an appeal. . . . It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Citation omitted; internal quotation marks omitted.) *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 12, 287 A.3d 557 (2023).

In the present case, we conclude that the appeal is not moot because, although the plaintiff withdrew its foreclosure action, this court could provide practical relief to the defendant if it decided her claim on the merits. Specifically, if this court determined that the defendant should have been permitted to file her proposed counterclaim, it could remand this case to the trial court with direction to restore the case to the docket and conduct further proceedings with respect to the defendant's proposed counterclaim. "Although the plaintiff's right . . . to withdraw [*its*] *action* before a hearing on the merits . . . is absolute and unconditional . . . such withdrawal in no way impairs the right of the defendant to prosecute a previously filed counterclaim." (Citation omitted; emphasis in original; internal

quotation marks omitted.) *Sovereign Bank* v. *Harrison*, supra, 184 Conn. App. 442–43; see also Practice Book § 10-55 ("[t]he withdrawal of an action after a counterclaim, whether for legal or equitable relief, has been filed therein shall not impair the right of the defendant to prosecute such counterclaim as fully as if said action had not been withdrawn, provided that the defendant shall, if required by the judicial authority, give bond to pay costs as in civil actions").

The plaintiff's reliance on *Sovereign Bank* v. *Harrison*, supra, 184 Conn. App. 436, to support its position is misplaced. In *Sovereign Bank*, the issue was whether the trial court erred in interpreting the defendant's special defense as a counterclaim and, therefore, lacked the authority to restore that claim to the docket following the plaintiff's voluntary withdrawal of its action. Id., 438. This court's resolution of that issue turned on the differences between special defenses and counterclaims. Id., 444–46. Ultimately, this court determined that the defendant's special defense "[could not] reasonably be construed as stating an independent cause of action, and, therefore, the trial court erred in construing it as a counterclaim. Because there was no pending counterclaim as of the date of the withdrawal, the court lacked the authority to restore the case to the docket." Id., 447. In contrast to *Sovereign Bank*, it is undisputed that the defendant in the present case sought to amend her answer to assert a counterclaim, as opposed to a special defense.[4] Although the defendant's proposed counterclaims were not yet filed or pending when this action was withdrawn—because the court had effectively denied her requests for leave to amend her answer to assert the proposed counterclaims when it sustained the plaintiff's objections to her requests for leave to

---

[4] On appeal, the defendant is not seeking relief to pursue the separate special defenses that she had asserted in relation to the foreclosure action that has been withdrawn.

amend—the fact remains that the plaintiff's withdrawal would not have impaired her right to proceed with those proposed counterclaims had she otherwise been permitted to file them. See id. Accordingly, we proceed to the merits of the defendant's appeal.

## II

The defendant claims that the court abused its discretion in sustaining the plaintiff's objections to her requests for leave to amend her answer because each claim in her proposed counterclaim was timely asserted and no such claim would have prejudiced the plaintiff. We disagree.

Pursuant to General Statutes § 52-130, "a party, as a matter of right, may make substantive amendments to any pleading. That right is subject only to the court's discretion to award costs or to limit an amendment if doing so is necessary to prevent undue delay of a trial." (Emphasis omitted.) *Ocwen Loan Servicing, LLC* v. *Mordecai*, 209 Conn. App. 483, 498, 268 A.3d 704 (2021). Similarly, "Practice Book § 10-60 (a) provides that a party may amend his or her pleadings in three ways: by order of the judicial authority, by written consent of the adverse party, or by filing a request for leave to file such amendment, with the amendment appended. If no party files an objection, the amendment is deemed to have been filed by consent, but if an objection is filed, the matter is placed upon the next short calendar for consideration of the court. Practice Book § 10-60 (a) (3). 'The judicial authority may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial.' Practice Book § 10-60 [c]." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 184, 73 A.3d 742 (2013).

"The granting or denial of a motion to amend the pleadings is a matter within the trial court's discretion.

. . . In the interest of justice courts are liberal in permitting amendments; unless there is a sound reason, refusal to allow an amendment is an abuse of discretion. . . . The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case. The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial. . . . In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment or to his adversary by granting the motion, with the resultant delay. . . . The law of this state favors courts allowing amendments in the absence of some sound basis for not doing so . . . particularly if the record fails to disclose some significant injustice or prejudice to the non-moving party." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Ocwen Loan Servicing, LLC* v. *Mordecai*, supra, 209 Conn. App. 498–99.

"While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion.

. . . It is the [defendant's] burden in this case to demonstrate that the trial court clearly abused its discretion." (Internal quotation marks omitted.) *Perugini* v. *Giuliano*, 148 Conn. App. 861, 871–72, 89 A.3d 358 (2014).

In the present case, the record afforded the court a sound basis for sustaining the plaintiff's objections to the defendant's requests for leave to amend her answer to assert a counterclaim.[5] See *Ocwen Loan Servicing, LLC* v. *Mordecai*, supra, 209 Conn. App. 500–501 (where trial court failed to provide any explanation for its decision, reviewing court examined record to determine whether it reflected sound reason for denial of defendants' request to amend their special defenses). Specifically, the court reasonably could have concluded, as the plaintiff repeatedly argued, that permitting the defendant's amendments would have caused an unreasonable delay. See *Perugini* v. *Giuliano*, supra, 148 Conn. App. 872. By the time the defendant filed her requests for leave to amend, the foreclosure action already had been pending for approximately two years. During that time, the defendant had filed several unmeritorious motions, in addition to two interlocutory appeals that were dismissed, and the court could have considered the defendant's requests to amend her

---

[5] We note that, in the plaintiff's objections to the defendant's requests for leave to amend her answer, the plaintiff also referenced the general legal principle requiring that a counterclaim arises out of the same transaction as the complaint. The plaintiff did not, however, address the application of that principle in the particular context of foreclosure actions, where our case law has established that, for a defendant's counterclaims in such an action to be valid, they must relate to the making, validity, or enforcement of the note or mortgage. See, e.g., *Wells Fargo Bank, N.A.* v. *Melahn*, 198 Conn. App. 151, 169 n.12, 232 A.3d 1201, cert. denied, 335 Conn. 947, 238 A.3d 19 (2020); see also *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 667, 212 A.3d 226 (2019). Because the plaintiff did not base its objections to the defendant's proposed counterclaims on any alleged violation of that rule, we have no occasion to consider whether the counterclaims at issue here sufficiently related to the making, validity, or enforcement of the note or mortgage to make them legally valid.

answer as an additional dilatory tactic. See *Ocwen Loan Servicing, LLC* v. *Mordecai*, supra, 501 (considering whether defendants had engaged in dilatory behavior before filing request for leave to amend special defenses by, among other things, filing improper interlocutory appeals or excessive and unproductive motions).

Moreover, this was not an instance where either of the defendant's proposed counterclaims was based on information that she recently had obtained or learned after filing her answer, thereby potentially making it reasonable for her to wait for almost two years after she was served before seeking leave of court to assert the counterclaim. See id., 500 (concluding that it was reasonable for defendants to wait to amend special defenses on basis of information that could be obtained during discovery related to those defenses). To the contrary, although the defendant alleged that the plaintiff's "most recent" trespasses onto her property had occurred on December 23, 2020, and May 26, 2021, she also alleged that there had been at least fifty forcible entries onto the property during the term of her mortgage. The plaintiff did not claim that she only recently learned of the alleged misconduct underlying her proposed counterclaims at the time she filed her requests for leave to amend her answer.[6] Thus, the court could have considered that the defendant's requests had not been "made seasonably." (Internal quotation marks omitted.) *Perugini* v. *Giuliano*, supra, 148 Conn. App. 872. On that basis, we cannot conclude that the court abused its discretion in sustaining the plaintiff's objections to the defendant's requests for leave to amend her answer to assert a counterclaim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Indeed, the defendant's original answer filed in March, 2020, indicates that she already had knowledge of the alleged misconduct underlying her proposed counterclaims at that time. Specifically, in her second special

defense, the defendant alleged that "[t]he plaintiff has, during the pendency of this action, caused one or more of its agents to set foot on the property, which constituted an act of criminal trespass."